239 P.3d 611 (2010)
Jamie STANLEY, Appellant,
v.
Harold COLE and "Jane Doe" Cole, and their marital community, Respondents.
No. 64922-1-I.
Court of Appeals of Washington, Division 1.
September 27, 2010.
*613 Vonda M. Sargent, Law Offices of Vonda Sargent, Seattle, WA, Kenneth W. Masters, Wiggins & Masters PLLC, Bainbridge Island, WA, for Appellant.
Timothy R. Gosselin, Gosselin Law Office, Tacoma, WA, Jeffrey R. Lanthorn, Hollenbeck Lancaster Miller & Andrews, Bellevue, WA, for Respondent.
LAU, J.
¶ 1 Jamie Stanley appeals the denial of her motion to vacate an arbitration award. She contends the award should have been vacated because her attorney was taking care of her ill parents for several months, which prevented her from filing a prehearing statement, appearing at the arbitration hearing, or timely requesting a trial de novo. Because the trial court acted well within its discretion in concluding these circumstances did not justify relief under CR 60(b)(9) as an "unavoidable casualty or misfortune" that prevented Stanley from prosecuting her case, we affirm.

FACTS[1]
¶ 12 In mid-December 2004, Harold Cole pulled out from a stop sign and collided with Jamie Stanley as she was driving on Warren Avenue in Bremerton. On November 14, 2007, she commenced this lawsuit against Cole in Kitsap County Superior Court, claiming his negligence caused the accident and damages. The following month, Cole filed his answer and affirmative defenses.
¶ 13 Stanley's attorney, Vonda Sargent, filed a statement of arbitrability pursuant to MAR 1.2 on July 31, 2008. On August 22, the case was transferred to mandatory arbitration. An arbitrator was appointed in October 2008. He scheduled the arbitration hearing for December 5, 2008,[2] with prehearing statements of proof due by November 21.
¶ 4 Cole timely delivered his prehearing statement to Sargent and the arbitrator. He admitted liability but contested proximate cause and Stanley's damages. The statement disclosed the evidence he planned to present. It included a witness list, Stanley's medical records, employment records, and Stanley's April 30, 2008 deposition transcript. The statement also confirmed the arbitration hearing date, time, and location. The record does not show whether Sargent communicated with Stanley about the upcoming arbitration. Sargent failed to submit a prehearing statement to Cole's attorney or the arbitrator.[3] The arbitration hearing proceeded as originally scheduled. But neither Stanley nor Sargent appeared.[4] Sargent never requested a *614 hearing continuance or communicated in any way with Cole's attorney or the arbitrator during this period. After the hearing, the arbitrator awarded Stanley $7,000, served a copy of the award on the parties, and filed the award on December 8, 2008. Neither party requested a trial de novo within 20 days of the arbitration award filing date, as required under MAR 6.2.[5]
¶ 15 Almost two months later, on February 6, 2009, Stanley moved to vacate the arbitration award under CR 60. To support the motion, she attached Sargent's declaration. She submitted no other evidence and cited no case authority. Relying on CR 60(b)(9)'s "unavoidable casualty or misfortune" provision,[6] Stanley argued Sargent had experienced an unavoidable misfortune that prevented her from prosecuting the casethe illness of both her parents.
¶ 6 Sargent's declaration testimony explained why she had neglected Stanley's case between late August 2008 and January 5, 2009. She described her mother's declining health and eventual death on November 17, 2008.[7] The funeral occurred on the same day the prehearing statement was due. Two or three days before the arbitration hearing, her father was briefly hospitalized due to illness. Sargent said she spent the entire month of December taking him to various specialists. Also during this period, her office lease expired. Friends and family helped her move to a new office space. But she also acknowledged,
15. While all of this was going on, I apparently failed to contact opposing counsel [Cole's attorney] to inform him of my situation.
16. Somehow, I called his co-worker while I was dealing with my mother dying, but I do not recall making that phone call nor do I recall speaking with him.
....
31. I admit I neglected my practice to the extent that an arbitration was held without my presence or my client's presence, however, I can think of no better reason than stopping and caring for aging parents.
When Sargent returned to work in January 2009, she was "faced with a mountain of paperwork" and "finally located the arbitration award."
¶ 7 After Cole's attorney failed to return her telephone calls and moved to enter judgment on the arbitration award, Stanley filed the motion to vacate. The court denied the motion to vacate on February 13, 2009.[8] It also denied Stanley's untimely reconsideration motion[9] and granted Cole's motion for entry of judgment on the arbitration award. Stanley appeals.

ANALYSIS
¶ 8 Stanley contends the superior court erred by denying her motion to vacate the arbitration award. Under CR 60(b), a court may relieve a party from a final judgment, order, or other proceeding in limited situations specified by the rule. We review the court's decision for an abuse of discretion. Pybas v. Paolino, 73 Wash.App. 393, 399, 869 P.2d 427 (1994). "A trial court abuses its discretion when its decision is manifestly unreasonable or based upon untenable grounds." Boguch v. Landover Corp., 153 Wash.App. 595, 619, 224 P.3d 795 (2009). "[D]iscretion is abused only where no reasonable person would have taken the view adopted by the trial court." Carle v. *615 McChord Credit Union, 65 Wash.App. 93, 111, 827 P.2d 1070 (1992).
¶ 9 Stanley argues that the arbitration award should be treated as a default judgment because neither she nor her attorney appeared at the arbitration hearing. Courts apply CR 60(b) more liberally to judgments by default than those on the merits. Pybas, 73 Wash.App. at 399, 869 P.2d 427. While Stanley concedes the arbitration hearing was not "strictly" a default proceeding, she maintains that it was "similar," so the more lenient CR 60(b) standard for default judgments should apply. Appellant's Br. at 11. She relies principally on Pybas, which also involved a CR 60(b) motion to set aside an arbitration award. The court there concluded that the more liberal standard for vacating default judgments was inapplicable. Pybas, 73 Wash.App. at 399, 869 P.2d 427. It observed that this standard was rooted in a policy consideration favoring judgments on the merits but that consideration had "little relevance" in the case before it because there had been a hearing on the merits and "nothing suggests that [plaintiff] was deprived of an opportunity to present his case at the arbitration hearing." Pybas, 73 Wash.App. at 400, 869 P.2d 427 (emphasis added). Stanley argues that the opposite conclusion should be reached in her case because the arbitration proceeding was not a hearing on the merits and she had no opportunity to present her case. As a consequence, she claims the arbitration award is essentially a default judgment and the more liberal standard for vacating the judgment should apply.
¶ 10 We disagree. Under CR 55(a)(1), a party is subject to default if the party "has failed to appear, plead, or otherwise defend...." Stanley fully participated in prosecuting her case until Sargent's parents suffered illnesses. Sargent appeared for Stanley, filed a complaint, elected to set the matter for arbitration, selected an arbitrator, and participated in discovery. Stanley and Sargent's absence from the hearing therefore was not the equivalent of failing to appear and prosecute the action.[10]See Tacoma Recycling, Inc. v. Capitol Material Handling Co., 34 Wash.App. 392, 394-95, 661 P.2d 609 (1983) (judgment did not qualify as default judgment though defendant failed to attend bench trial because defendant had previously appeared and filed pleadings). In addition, the arbitration hearing constituted a hearing on the merits. Although Stanley and Sargent did not participate in the hearing, the arbitrator awarded $7,000 in Stanley's favor based on the evidence presented, which included her deposition transcript and medical and employment records provided during discovery. When a tribunal considers evidence, the resulting judgment is not a default judgment even if one party is absent. See In re Marriage of Daley, 77 Wash.App. 29, 32, 888 P.2d 1194 (1994). Because the arbitration award here was not equivalent to a default judgment, we reject Stanley's contention that the trial court should have applied a more liberal standard to her CR 60(b) motion to vacate.
¶ 11 We next address whether the trial court abused its discretion because Stanley was entitled to relief under CR 60(b)(9).[11] Under this rule, a court may relieve a party or the party's legal representative from a final judgment, order, or proceeding if the court finds "[u]navoidable casualty or misfortune prevent[ed] the party from prosecuting or defending." CR 60(b)(9). Stanley cites no case authority addressing what circumstances qualify as an "unavoidable casualty or misfortune" under this rule. And our search reveals sparse Washington authority on this question.
¶ 12 Our Supreme Court adopted this rule in 1967 as part of its complete reorganization of Washington civil procedure rules. Curtis Lumber Co. v. Sortor, 83 Wash.2d 764, 766-67, 522 P.2d 822 (1974); Order Adopting *616 Civil Rules for Superior Court, 71 Wash.2d at xvii, cxxiv (1967). While CR 60(b) largely follows its federal counterpart, several subsections, including CR 60(b)(9), were instead taken from RCW 4.72.010. That statute allowed a superior court to vacate a judgment "[f]or unavoidable casualty, or misfortune preventing the party from prosecuting or defending."[12] RCW 4.72.010(7). Because this statutory language was incorporated wholesale into CR 60(b)(9), we find three Washington cases addressing this provision persuasive to determine CR 60(b)(9)'s scope. Compare Sprint Spectrum, LP v. Dep't of Revenue, 156 Wash.App. 949, 235 P.3d 849 (2010) (case interpreting prior version of Administrative Procedure Act, chapter 34.05 RCW, was persuasive as to meaning of subsequent version where the two versions' language was not materially different).
¶ 13 These cases support relief under the rule when events beyond a party's control such as a serious illness, accident, natural disaster, or similar eventprevents the party from taking actions to pursue or defend the case.[13] For example, in Adams v. Adams, 181 Wash. 192, 42 P.2d 787 (1935), the defendant claimed a severe case of influenza left him delirious and mentally incapacitated until after the default order was entered. Adams, 181 Wash. at 193, 42 P.2d 787. The court held that RCW 4.72.010(7) justified relief from the default order under these circumstances. Adams, 181 Wash. at 195, 42 P.2d 787. And in State v. Scott, 20 Wash.App. 382, 385-86, 580 P.2d 1099 (1978), a criminal defendant argued that RCW 4.72.010(7) allowed the court to modify a probation revocation order entered based on "erroneous and incomplete" information. We rejected this argument, explaining, "It strains the language of [RCW 4.72.010] s 7 to apply it to something other than an accident or disease or natural catastrophe preventing the appearance of a party or his witness."[14]Scott, 20 Wash.App. at 386 n. 1, 580 P.2d 1099.
¶ 14 Stanley maintains that the rule applies here because her attorney's parents became seriously ill and one of them died. We agree that under Adams and Scott, these circumstances qualify as an "unavoidable casualty or misfortune" under CR 60(b)(9). But an unavoidable casualty or misfortune alone is insufficient to allow relief under the rule. The rule further requires the party seeking CR 60(b)(9) relief to establish that the casualty or misfortune "prevent[ed] the party from prosecuting or defending" the case. This language serves to further limit the circumstances that warrant relief under the rule. Our Supreme Court applied this rule-based limitation in Swasey v. Mikkelsen, 65 Wash. 411, 118 P. 308 (1911). There, the defendant moved to vacate a judgment based on his wife's extended illness. The trial court denied his motion and the Supreme Court affirmed. It reasoned that "his attendance at his wife's bedside was not so constant, nor his duties there so exacting, that he could not have found time to employ counsel." Swasey, 65 Wash. at 415, 118 P. 308.[15] Thus, despite the existence of an unavoidable misfortune, the defendant was not entitled to relief from the judgment because he failed to show that the misfortune actually prevented him from defending against the lawsuit.[16]
*617 ¶ 15 Like in Swasey, Stanley fails to show that unavoidable misfortune prevented her from prosecuting her case. Sargent testified that she walked away from her practice for four to five months because she was burdened with time-consuming family responsibilities. Notably, she failed to explain why she was unable to take minimal steps to protect her client's interests over this period, such as moving for a continuance, seeking opposing counsel's agreement to postpone the hearing, sending notice of unavailability, or withdrawing as counsel.[17] Indeed, the undisputed record demonstrates that Sargent made arrangements with opposing counsel who worked in the same office as Cole's attorney, but she failed to do so here. And she arranged with the building management to accept legal messenger deliveries to her office while away from her law practice during this time.[18] Stanley also fails to show that her attorney's inaction prevented her from prosecuting her case by, for example, retaining new counsel or proceeding pro se.
¶ 16 Stanley also relies on L.P. Steuart, Inc. v. Matthews, 329 F.2d 234, 235 (D.C.Cir. 1964), in which the court affirmed reinstatement of a plaintiff's personal injury suit after his attorney grossly neglected the case while dealing with his wife's illness and parents' deaths and then repeatedly misled his client about the status of his case. But that case involved FRCP 60(b)(6)'s federal "catch-all" rule,[19] not the "unavoidable casualty or misfortune" *618 rule at issue here. Steuart, 329 F.2d at 235. Where a state rule parallels a federal rule, federal cases may be looked to for persuasive authority as to the meaning of the state rule. Luckett v. Boeing Co., 98 Wash.App. 307, 311, 989 P.2d 1144 (1999). But where, as here, there is no parallel federal rule, "federal case law must be consulted with caution." KARL B. TEGLAND, 3A WASHINGTON PRACTICE: RULES PRACTICE CR 1 author's cmts. at 10 (5th ed. 2006); see also, WESCO Distrib., Inc. v. M.A. Mortenson Co., 88 Wash.App. 712, 717, 946 P.2d 413 (1997) (federal case law not persuasive in interpreting CR 52(a)(4) because language of federal rule counterpart differed). Because the federal civil rules contain no counterpart to CR 60(b)(9)'s "unavoidable casualty or misfortune" rule, Steuart is unpersuasive.
¶ 17 Steuart is also inapplicable to Stanley's case for several other reasons. In Steuart, the trial court dismissed plaintiff's case eight months after filing suit for failure to prosecute. In contrast, the arbitrator awarded $7,000 in Stanley's favor after a hearing on the merits of her case. In Steuart, the court found persuasive evidence that the plaintiff repeatedly asked his attorney how the case was proceeding and his attorney actively misled him about the status of the case. Unlike in Steuart, Stanley presented no evidence that she acted diligently to stay informed about her case or that Sargent actively misled her.
¶ 18 Stanley next cites Barr v. MacGugan, 119 Wash.App. 43, 46, 78 P.3d 660 (2003) in a statement of additional authority. In that case, the trial court dismissed plaintiff's case (without a resolution on the merits) after her attorney failed to comply with an order compelling responses to discovery requests. After the plaintiff left several phone messages with her attorney to check on the status of her case, the attorney never responded. When she learned from a third party that her case had been dismissed and that her attorney had been suffering from severe clinical depression, she hired new counsel and successfully moved to vacate the dismissal order under CR 60(b)(11)'s "catch-all" provision. Barr, 119 Wash.App. at 44-45, 78 P.3d 660.
¶ 19 While acknowledging the general rule that an attorney's negligent conduct is binding on his client, we concluded that this rule did not necessary apply when a lawyer's severe mental illness or disability interfered with the attorney/client relationship. Barr, 119 Wash.App. at 47, 78 P.3d 660. In affirming the order vacating dismissal, we reasoned,
From Tani, we conclude that the circumstances presented here are sufficiently extraordinary and that the trial court properly exercised its discretion to vacate the *619 judgment against Barr. In particular, we note that Barr diligently provided information to her attorney and made appropriate follow-up inquiries, but through no fault of her own was unaware of her attorney's disability. The irregularities that affected the proceedings below were entirely outside the control of the plaintiff, the defendant, and the court. Also, MacGugan has not shown with any specificity how he will be prejudiced by reinstatement.
In deciding this case, it is not necessary to consider whether gross negligence could constitute valid grounds to vacate a judgment under CR 60(b)(11). The point discussed in Tani that is most pertinent here is that there is no basis for attributing the attorney's "acts" to the client when the agency relationship has disintegrated to the point where as a practical matter there is no representation. Accordingly, in recognizing this exception, we limit it to situations where an attorney's condition effectively deprives a diligent but unknowing client of representation.[[20]]
Barr, 119 Wash.App. at 48, 78 P.3d 660 (emphasis added, footnote omitted).
¶ 20 Barr is not controlling here because (1) Stanley failed to offer argument or case authority under CR 60(b)(11)'s "catch-all" provision, (2) she offered no evidence to show her attorney suffered from a mental condition and she acted diligently to learn about the status of her case, and (3) Stanley's case was resolved on its merits, not by default judgment.
¶ 21 Finally, policy considerations further undermine Stanley's argument. In Washington, there is a strong policy favoring the finality of judgments on the merits. Lane v. Brown & Haley, 81 Wash.App. 102, 106, 912 P.2d 1040 (1996). Many attorneys face the all too common sudden illness of elderly parents and other family members. If these circumstances were sufficient by themselves to allow a party to vacate a judgment after months of inaction, the judicial system's compelling interest in finality and predictability would be unacceptably compromised. Lawyers owe a professional obligation to act diligently on behalf of their clients regardless of personal inconvenience and to adjust their work load to allow them to handle each case appropriately. See comments to RPC 1.3 and RPC 3.2. And RPC 1.4 requires lawyers to keep clients reasonably informed about significant developments affecting the timing or substance of their representation. See comments to RPC 1.4.
¶ 22 In addition, allowing a party to avoid a mandatory arbitration judgment under these circumstances would also undermine the judicial economy goals underlying the mandatory arbitration process. The statute authorizing mandatory arbitration in certain civil cases is intended primarily to alleviate court congestion and reduce delay in hearing cases. Fernandes v. Mockridge, 75 Wash.App. 207, 211, 877 P.2d 719 (1994). The mandatory arbitration rules serve this purpose by providing a simplified and economical way to resolve disputes involving claims of $50,000 or less. See MAR 1-8; RCW 7.06.020. The rules impose a strict 20-day limit for seeking a trial de novo if a party is dissatisfied with arbitration results. MAR 7.1(a). Allowing a party to circumvent this rule through CR 60(b)(9) would undermine the entire mandatory arbitration scheme. Compare Pybas, 73 Wash.App. at 401-04, 869 P.2d 427 (strictly limiting ability to invoke CR 60(b)(1) in mandatory arbitration context).
¶ 23 We conclude the trial court did not abuse its discretion in denying Stanley's motion under these circumstances.

Attorney Fees
¶ 24 Cole requests attorney fees on appeal under MAR 7.3, which states, "The court shall assess costs and reasonable attorney fees against a party who appeals the [arbitration] award and fails to improve the party's position on the trial de novo." And if the party fails to achieve a better result by appealing to this court, it is required to pay *620 the opposing party's attorney fees for the appeal. Boyd v. Kulczyk, 115 Wash.App. 411, 417, 63 P.3d 156 (2003). But the rule specifically provides, "Only those costs and reasonable attorney fees incurred after a request for a trial de novo is filed may be assessed under this rule." MAR 7.3 (emphasis added). Because Stanley never filed a request for a trial de novo, we deny the request for fees under the rule.
¶ 25 Cole also argues he should be awarded fees under RAP 18.9 because Stanley's appeal is frivolous. "[A]n appeal is frivolous if there are no debatable issues upon which reasonable minds might differ, and it is so totally devoid of merit that there was no reasonable possibility of reversal." Streater v. White, 26 Wash.App. 430, 435, 613 P.2d 187 (1980). The court considers the record as a whole and resolves all doubts against finding an appeal frivolous. Delany v. Canning, 84 Wash.App. 498, 510, 929 P.2d 475 (1997). Here, viewing the record as a whole, the appeal is not frivolous. Stanley cites relevant case law and raises arguments that are at least debatable. We deny Cole's attorney fee request.

CONCLUSION
¶ 26 Because the trial court properly exercised its discretion under the circumstances presented here, we affirm the order denying Stanley's CR 60(b)(9) motion to vacate arbitration award. And we deny Cole's attorney fees request.
WE CONCUR: SCHINDLER and GROSSE, JJ.
NOTES
[1] The facts are not disputed.
[2] Under MAR 5.1, the arbitrator sets the time, date, and place of the hearing and gives notice of the hearing to the parties. Except by stipulation or for good cause shown, the hearing must be scheduled to take place not sooner than 21 days or later than 63 days from the date the case is assigned to the arbitrator. Sargent does not contend she failed to receive the arbitrator's notice of arbitration hearing.
[3] MAR 5.2 requires that at least 14 days before the date of the hearing, each party shall file with the arbitrator and serve upon all other parties a prehearing statement of proof containing a list of witnesses whom the party intends to call and a list of exhibits and documentary evidence.
[4] MAR 5.4 provides, "The arbitration hearing may proceed, and an award may be made, in the absence of any party who after due notice fails to participate or to obtain a continuance. If a defendant is absent, the arbitrator shall require the plaintiff to submit the evidence required for the making of an award. In a case involving more than one defendant, the absence of a defendant does not preclude the arbitrator from assessing as part of the award damages against the defendant or defendants who are absent. The arbitrator, for good cause shown, may allow an absent party an opportunity to appear at a subsequent hearing before making an award. A party who fails to participate without good cause waives the right to a trial de novo." (Emphasis added.)
[5] Under MAR 6.2, the arbitrator must file the award with the superior court clerk, together with proof of service of a copy to each party within 14 days after the hearing.
[6] At oral argument, counsel claimed that Sargent cited CR 60(b)(1), which allows the court to relieve a party for "[m]istakes, inadvertence, surprise, excusable neglect or irregularity in obtaining a judgment or order," in addition to CR 60(b)(9). But Stanley's written motion below states, "This request [to set aside arbitration award] is made pursuant to CR 60(b)(9)...."
[7] She also testified that her brother and father helped to care for her mother until she died.
[8] Sargent styled the motion below as "Motion to Set Aside Arbitration Award."
[9] Stanley assigns no error to this ruling.
[10] We note the record is silent on why Stanley failed to appear at the arbitration hearing.
[11] Stanley also argues she is entitled to relief under CR 60(b)(1), which allows relief in cases of "excusable neglect." But because Stanley raises this argument for the first time on appeal, we do not address it beyond noting that the neglect of a party's own attorney is generally insufficient to justify relief under this provision. Lane v. Brown & Haley, 81 Wash.App. 102, 107, 912 P.2d 1040 (1996).
[12] CR 60(b), which superseded RCW 4.72.010, now provides the exclusive basis for modifying or vacating final judgments in both criminal and civil cases. State v. Scott, 20 Wash.App. 382, 387, 580 P.2d 1099 (1978).
[13] Aside from case authority, we note that Professor Trautman offered a similar observation. "It would appear that [RCW 4.72.010(7)] has reference to such things as sicknesses, accidents, or perhaps death in the immediate family of one of the parties, such as to prevent the party from prosecuting or defending." PHILIP A. TRAUTMAN, VACATION & CORRECTION OF JUDGMENTS IN WASHINGTON, 35 WASH. L.REV. 505, 518 (1960).
[14] And in Windus v. Great Plains Gas, 255 Iowa 587, 122 N.W.2d 901, 906 (Iowa 1963), the Iowa Supreme Court relied on Black's Law Dictionary 1693 (4th ed.) to define "unavoidable casualty" "An event or accident which human prudence, foresight, and sagacity cannot prevent, happening against will and without negligence."
[15] We note that Westlaw's version of this opinion misspells respondent Swasey's name. We use the correct spelling in this opinion.
[16] We note that several other states have statutory or court rule provisions similar to CR 60(b)(9), and they, too, require parties seeking relief to demonstrate that the unavoidable casualty or misfortune prevented them from acting. For example, in one Nebraska case, the plaintiff sought to vacate the dismissal of his case for failure to prosecute based on his attorney's death. Emry v. Am. Honda Motor Co., Inc., 214 Neb. 435, 334 N.W.2d 786 (1983). The court concluded there was no authority to vacate the dismissal under its "unavoidable casualty" rule.

In the instant case it is true that Taylor's death probably was an unavoidable casualty or misfortune, yet it cannot be said that his death prevented Emry from prosecuting his claim. It would seem that 2 years was certainly a long enough time for the confusion resulting from his death to subside.
Emry, 334 N.W.2d at 792. And in an Iowa case, a defendant sought to vacate a judgment based on her illness. Home Fed. Sav. & Loan Ass'n of Harlan v. Robinson, 464 N.W.2d 894, 895 (Iowa 1990). The court rejected her argument based on the circumstances of her case, explaining,
Unavoidable casualty or misfortune means some casualty or misfortune growing out of conditions or circumstances that prevented the party or his attorney from doing something that, except therefor would have been done.... A serious illness requiring hospitalization could well support a finding of unavoidable casualty or misfortune. However, defendant's affidavit provides no more than an excuse for not being at the court house on December 12, 1988.... There is no evidence to support a finding her illness prevented her from hiring an attorney or filing a resistance to the motion.
Robinson, 464 N.W.2d at 895-96.
[17] MAR 5.1 and KCLMAR 5.1 authorize the arbitrator to continue the hearing "for good cause shown" or by stipulation. And CR 71 governs procedures for withdrawal and substitution of new attorney.
[18] The undisputed record shows that ABC Legal Messengers delivered defendant's prehearing statement of proof to Sargent's office on November 21, 2008, at 2:43 p.m. The messenger's notes on the delivery slip indicate, "Received by Building Manegment (sic) as per sign on Vonda's doorCN."
[19] Under FRCP 60(b)(6), a court may relieve a party from a final judgment for "any other reason that justifies relief." There is a parallel Washington "catch-all" provision, CR 60(b)(11), available in "extraordinary circumstances" not covered by any other section of CR 60(b). Flannagan v. Flannagan, 42 Wash.App. 214, 221, 709 P.2d 1247 (1985). But Stanley never cited or relied on this provision.

In any event, Washington courts have not interpreted CR 60(b)(11) to allow a judgment to be vacated based on an attorney's "gross negligence." The traditional rule is that the incompetence or neglect of a party's own attorney is insufficient to justify relief from a judgment in a civil case. Lane v. Brown & Haley, 81 Wash.App. at 107, 912 P.2d 1040, Haller v. Wallis, 89 Wash.2d 539, 547, 573 P.2d 1302 (1978). But some federal circuits, following Steuart, have held that a client may obtain relief under FRCP 60(b) based on the "gross negligence" of his or her attorney. In Community Dental Services v. Tani, 282 F.3d 1164, 1168 (2002), the Ninth Circuit explained,
Under this circuit's precedent, a client is ordinarily chargeable with his counsel's negligent acts. Clients are "considered to have notice of all facts known to their lawyer-agent." Because the client is presumed to have voluntarily chosen the lawyer as his representative and agent, he ordinarily cannot later avoid accountability for negligent acts or omissions of his counsel. While the above principles provide the general rule regarding the client-attorney relationship, several circuits have distinguished a client's accountability for his counsel's neglectful or negligent actstoo often a normal part of representationand his responsibility for the more unusual circumstance of his attorney's extreme negligence or egregious conduct. This circuit, however, has not yet addressed the question whether a client is responsible for his counsel's gross negligence, or, to put the question differently, whether gross negligence may constitute "extraordinary circumstances" warranting relief under Rule 60(b)(6)....
The circuits that have distinguished negligence from gross negligence in the present context have granted relief to the client where the default judgment was a result of his counsel's displaying "neglect so gross that it is inexcusable.".... These courts have concluded that an unknowing client should not be held liable on the basis of a default judgment resulting from an attorney's grossly negligent conduct, and that in such cases sanctions should be imposed on the lawyer, rather than on the faultless client.
....
We join the Third, Sixth, and Federal Circuits in holding that where the client has demonstrated gross negligence on the part of his counsel, a default judgment against the client may be set aside pursuant to Rule 60(b)(6).
Tani, 282 F.3d at 1168-69 (internal citations and footnotes omitted). And in Tani, the court acknowledged a circuit split on the issue, citing the Seventh and Eighth Circuits' contrary precedents. Tani, 282 F.3d at 1169 n. 11. We also note that Steuart has been criticized in the Second and Eleventh Circuits. See Stefanopoulos v. City of New York, 299 Fed.Appx. 49 (2nd Cir. 2008) (noting consistent reluctance to follow the approach of Steuart); Solaroll Shade & Shutter Corp. v. Bio-Energy Sys., Inc., 803 F.2d 1130 (11th Cir. 1986) (limiting Steuart to situations where there is evidence client is diligent despite attorney's gross negligence).
In addition, the Tani court expressly relied on the fact that the district court had entered a default judgment. Tani, 282 F.3d at 1170. There was no default judgment here. We do not address whether the Tani, rule applies in CR 60(b)(11) cases because Stanley did not claim "gross neglect" by Sargent under CR 60(b)(11).
[20] In a footnote, we also stated, "We also confine our analysis to the `extraordinary circumstances' provision, noting the federal authority in this area, as well as Barr's failure to offer argument or citation to legal authority under the `unavoidable casualty or misfortune' provision of CR 60(b)(9). RAP 10.3(a)(5)." Barr, 119 Wash.App. at 48 n. 1, 78 P.3d 660.