COURT OF APPEALS DIV I
2018 JUN 18 AM 9: 47


# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| IN RE THE MARRIAGE OF | ) | No. 77864-1-I |
| | ) | |
| MICHAEL P. BATEMAN | ) | DIVISION ONE |
| | ) | |
| Respondent | ) | |
| | ) | UNPUBLISHED OPINION |
| v. | ) | |
| | ) | |
| MINA K. BATEMAN, | ) | |
| | ) | |
| Appellant. | ) | FILED: June 18, 2018 |

SPEARMAN, J. — After the mother failed to appear for a readiness hearing and then did not appear for trial in this dissolution proceeding, the trial court proceeded to trial. Following trial, the court entered final orders, including a final parenting plan for the parties' three children. Thereafter, the court denied the mother's motion to vacate. The court's decision reflects its consideration of the factors outlined by statute when it adopted the residential provisions of the parenting plan. The court did not abuse its discretion when it concluded there was no irregularity in the trial proceeding or other basis to warrant vacating the final orders. We affirm.

## FACTS

Mina and Michael Bateman married in 2004 and had three children during the marriage. The family had been living in Oak Harbor, Washington for a year when the couple separated in June 2016. For a brief period immediately after the parties

separated, the mother struggled with a substance abuse issue and was temporarily unable to care for the children. During this time, the children lived with the father and saw the mother, who was staying in Gig Harbor with family, on weekends.

In July 2017, the father filed a petition to dissolve the marriage. The father initially retained counsel, but at some point early on in the case, he began representing himself. In September 2016, three months after the separation, the mother returned to Oak Harbor and rented an apartment. The court entered a temporary parenting plan providing for the children to live with the mother on weekdays and with the father on weekends. This plan remained in place for almost a year and during that time, the mother successfully completed an outpatient substance abuse treatment program.

In July 2017, over the father's objection, the court allowed the mother to relocate to Seattle. In conjunction with this ruling, the court entered a temporary parenting plan proposed by the mother that provided for the children to live primarily with her and provided for residential time with the father in Oak Harbor three weekends per month.

By early August, the dates for the trial readiness hearing and the dissolution trial were set for October 30, 2017 and November 28, 2017, respectively. Around the same time, because the mother could no longer afford her services, her attorney withdrew from the case. The attorney filed a notice of intent to withdraw which informed the mother of the November 28, 2017 trial date.[1] The mother's attorney sent the notice to the mother's Seattle home address by certified and regular mail on August 29, 2017.

The mother did not appear at the readiness hearing on October 30 nor did she appear for trial a month later on November 28. The father appeared and informed the

---

[1] The notice to withdraw did not include the date of the readiness hearing and there is no evidence in the record to indicate that the mother had notice of the date.

2

court that he had no specific discussions with the mother about her intent to attend trial. At the court's request, the father placed a telephone call to the mother. The mother did not answer and the father left a voicemail message. After confirming that the father was prepared for trial, the court observed that it would be unfair to "penalize" the father for the mother's lack of compliance with the court schedule and proceeded to trial. Verbatim Report of Proceedings (VRP) at 4-5.

At the time of trial, the children were ages 10, 7, and 4. The father testified in a narrative fashion and the court also examined him extensively. The father testified that shortly after the mother's move to Seattle, the oldest child was unhappy and "was acting out." VRP at 10. The child alleged an incident of abuse at the hands of her mother. This allegation led to the involvement of Child Protective Services (CPS) and to the parties' agreement that the oldest child should return to Oak Harbor to live with the father full-time.

The father testified that his daughter had adjusted well to living with him and that her behavior problems had abated. The father said that when the younger daughters visited on the weekends, with increasing frequency, they expressed a preference to live with him full-time in Oak Harbor.

The father said that, until shortly before trial, he believed that it was in the children's best interests to maintain the current living arrangements. But, he changed his mind because he observed that living apart was negatively affecting the children's relationships. The father also believed that the mother was unable to provide sufficient structure for the children. Therefore, the father proposed that all three children live with him in Oak Harbor during the school week and reside with the mother on weekends.

3

The father described his work schedule and the arrangements he had made to care for his oldest daughter and discussed the additional arrangements he would make for the younger children if they were to live with him during the week.

After the noon recess, the court announced that the mother called the court's administrative office during the recess. The mother informed court personnel that she was not aware of the trial date and inquired about appearing telephonically. The court directed court staff to tell the mother that the "trial was scheduled for today and that we are conducting the trial." VRP at 67. The father continued to testify, the court took another recess and then reconvened to orally announce its decision.

The court observed that it was "regrettable" that the mother did not appear for trial after she was "duly notified" of the trial date. VRP at 75-76. Based on the evidence, the court determined that the children should live together, with the father, during the week and with the mother on weekends (except for the first weekend of the month). In making this decision, the court expressly considered the best interest of the children, the objectives of a permanent parenting plan under RCW 26.09.184, and the statutory considerations relating to residential provisions under RCW 26.09.187.

The court found that both parents had strong relationships with the children, that the mother had historically taken a greater role in the day-to-day caretaking, and that she had "by and large" provided good care. VRP at 80. On the other hand, the court noted that the mother's ability to care for the children had been compromised for a time because of a substance abuse issue and that her relationship with the oldest child suffered after the move to Seattle. The court observed that, as a general matter, it is preferable for siblings to live together, and that according to the evidence, while the

children were young, this was apparently their preference. The court also found that the mother's failure to prepare and appear for trial was concerning and further supported the court's decision. The court entered a parenting plan that essentially reversed the residential schedule imposed in the July 2017 temporary parenting plan and made it effective as of January 1, 2018, after the school winter break.

Approximately a week after the entry of the final orders, the mother retained new counsel and filed a motion to vacate. In a declaration submitted in support of her motion, the mother stated that she was not aware of the November 28 trial date nor did she know that a readiness hearing had previously occurred. On the day of trial, the mother was working at a Seattle High School. She said she only became aware that the trial was underway in Island County when she checked her voicemail at 1:30 p.m. during her lunch break. According to the mother, she then immediately called the clerk's office and asked if she could appear by telephone, or alternatively, if she could send a message to the trial judge explaining that she did not know about the court date. The mother reported that the clerk's office staff said there was "nothing they could do" other than notify her of the outcome. Clerk's Papers (CP) at 11. The mother claimed that the final parenting plan entered by the court was not in the children's best interest because she had been the primary caretaker for most of the children's lives and because the new plan would require the children to change schools and leave friends and enrichment activities. The mother failed to mention that the oldest child was already attending school in Oak Harbor and the youngest child was not yet enrolled in school.

In response, the father submitted evidence to refute the mother's claim that she did not receive his voicemail message until the afternoon. The evidence supplied by the

father indicted that the mother sent several text messages to the father asking for information about the trial starting at 10:48 a.m.

At the hearing on the mother's motion, the trial court confirmed that the address to which the mother's attorney's sent the notice of her intent to withdraw, by both regular and certified mail, was correct. The court recounted the attempt to contact the mother before the trial began and noted that, by the time the mother called the court in the afternoon, the evidentiary hearing was nearly complete. The court also noted that the father testified with regard to the statutory factors related to residential provisions and that the court found compelling evidence that the youngest children should reside with the oldest, who was already living by agreement with the father. The court rejected the mother's claim that her unawareness of the trial date provided a basis to vacate the orders. The court entered an order denying the motion to vacate. The mother appeals.[2]

## ANALYSIS

The mother challenges the final parenting plan. She contends that the trial court (1) failed to enter required written findings of fact and conclusions of law in support of the plan, and (2) failed to consider the best interests of the children or apply the statutory factors under RCW 26.09.187(3) with regard to the residential provisions.

We review a trial court's fashioning of a final parenting plan for an abuse of discretion; the trial court's discretion in this area is "broad." In re Marriage of Katare, 175 Wn.2d 23, 35, 283 P.3d 546 (2012). A court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or untenable reasons. In re Custody of Halls, 126 Wn. App. 599, 606, 109 P.3d 15 (2005). A decision is manifestly

---

[2] After the mother filed her notice of appeal, a commissioner of this court granted the mother's motion to stay the implementation of the permanent parenting plan.

unreasonable if the decision is outside the range of acceptable choices based on the facts and applicable legal standard. In re Halls, 126 Wn. App. at 606. We do not reweigh the evidence to determine whether we would reach a different conclusion. In re Marriage of McNaught, 189 Wn. App. 545, 561, 359 P.3d 811 (2015), review denied, 185 Wn.2d 1005, 366 P.3d 1243 (2016).

"The trial court must make a residential placement decision in the best interests of the child and only after considering the factors found in RCW 26.09.187(3)." In re Parentage of J.H., 112 Wn. App. 486, 492-93, 49 P.3d 154 (2002). RCW 26.09.187(3) sets forth the following criteria:

(a) The court shall make residential provisions for each child which encourage each parent to maintain a loving, stable, and nurturing relationship with the child, consistent with the child's developmental level and the family's social and economic circumstances. The child's residential schedule shall be consistent with RCW 26.09.191. Where the limitations of RCW 26.09.191 are not dispositive of the child's residential schedule, the court shall consider the following factors:

(i) The relative strength, nature, and stability of the child's relationship with each parent;

(ii) The agreements of the parties, provided they were entered into knowingly and voluntarily;

(iii) Each parent's past and potential for future performance of parenting functions as defined in [RCW 26.09.004(2)] including whether a parent has taken greater responsibility for performing parenting functions relating to the daily needs of the child;

(iv) The emotional needs and developmental level of the child;

(v) The child's relationship with siblings and with other significant adults, as well as the child's involvement with his or her physical surroundings, school, or other significant activities;

(vi) The wishes of the parents and the wishes of a child who is sufficiently mature to express reasoned and independent preferences as to his or her residential schedule; and

7

(vii) Each parent's employment schedule, and shall make accommodations consistent with those schedules.

Factor (i) shall be given the greatest weight.

A trial court may not draw presumptions from the temporary parenting plan. RCW 26.09.191(5). Thus, a trial court cannot establish a permanent parenting plan solely on the basis of the temporary parenting plan provisions or presume that maintaining the same primary residential provisions is in the child's best interest. In re Marriage of Kovacs, 121 Wn.2d 795, 808-09, 854 P.2d 629 (1993). Nor is a presumption based on the temporary parenting plan warranted when the analysis of the factors in RCW 26.09.187(3)(a) results in a "tie." In re Marriage of Combs, 105 Wn. App. 168, 176-77, 19 P.3d 469 (2001).

A trial court is not required to enter written findings on each of the RCW 26.09.187(3)(a) factors. In re Marriage of Magnuson, 141 Wn. App. 347, 351, 170 P.3d 65 (2007). In the absence of written findings, we may look to the court's oral ruling. Young v. Thomas, 193 Wn. App. 427, 443, 378 P.3d 183 (2016).

The final parenting plan entered in this case includes all the components required by RCW 26.09.184(2). And contrary to the mother's argument, the court expressly concluded that the plan is in the best interests of the children. Although the preprinted form provided space for the court to enter findings of fact to support limitations under RCW 26.09.191, which were not imposed here, or other findings, the court did not enter additional written factual findings. Nevertheless, read in its entirety, the trial court's oral ruling addresses all of the RCW 26.09.187(3) factors and explicitly provides its reasons for reversing the residential provisions of the July 2017 temporary plan and placing the children in the care of their father for the majority of the time.

The mother suggests that without her testimony, the court could not adequately address the factors in RCW 26.09.187(3), such as the nature and relative strength of the children's relationships with each parent. Undoubtedly, it would have been preferable if the mother had attended the trial and testified. In determining the provisions of a parenting plan, it is not only the interests of the parents at stake. In light of the court's responsibility to protect the best interests of the children, RCW 26.09.184(g), the court would have acted within its discretion by handling the matter differently when the mother belatedly attempted to participate. Nevertheless, that the court could have continued the matter or allowed the mother to testify by telephone in these circumstances does not mean that it was an abuse of discretion to decline to do so.

As explained, the court considered evidence related to each of the factors set forth in RCW 26.09.187(3)(a). The father testified about the children's past and current circumstances, their relationships with each other and with each parent, the children's preferences, and their developmental levels. As the mother acknowledged, both parents had been before the court on several occasions during the course of the dissolution proceeding and the court was well aware of the history and prior rulings. In sum, the mother's absence from trial did not prevent the court from fashioning a parenting plan in the best interests of the children in consideration of the relevant statutory factors.

The mother next contends that the trial court abused its discretion by failing to analyze the factors under RCW 26.09.520 and failing to enter a final order on relocation. But this was a trial on the father's petition for dissolution, focusing on the orders necessary to dissolve the marriage and provide for the care and support of the children.

The court's decision with regard to the residential provisions of the parenting plan rendered a decision on the mother's relocation moot.

Finally, the mother contends that the court erred by failing to grant her motion to vacate. The mother sought relief under CR 59 and CR 60. CR 59(a)(1) permits a trial court to grant a new trial on the grounds of irregularity in the proceedings of the court, or any order of the court, or abuse of discretion, which prevented a party from having a fair trial. CR 60(b)(1) permits a court to grant a motion for relief from judgment or order on the grounds of: mistakes, inadvertence, surprise, excusable neglect or irregularity in obtaining a judgment or order. CR 60(b)(11) allows a trial court to vacate an order for "[a]ny other reason justifying relief from the operation of the judgment." An irregularity in obtaining an order exists where there is a failure to adhere to a prescribed rule or mode of proceeding, such as when a procedural matter that is necessary for the orderly conduct of trial is omitted or done at an unreasonable time or in an improper manner. Lane v. Brown & Haley, 81 Wn. App. 102, 106, 912 P.2d 1040 (1996). CR 60(b)(11) applies sparingly to situations involving extraordinary circumstances which relate to irregularities extraneous to the action of the court. In re Marriage of Knutson. 114 Wn. App. 866, 872–73, 60 P.3d 681 (2003).

The standard of review for denial of a motion for a new trial or a motion to vacate is abuse of discretion. Aluminum Co. of Am. v. Aetna Cas. & Sur. Co., 140 Wn.2d 517, 537, 998 P.2d 856 (2000); Mitchell v. Wash. State Inst. of Pub. Policy, 153 Wn. App. 803, 821, 225 P.3d 280 (2009). Again, the trial court abuses its discretion if the exercise of discretion was manifestly unreasonable, based on untenable grounds, or based on untenable reasons. Mitchell, 153 Wn. App. 821. Therefore, we may overturn a trial

10

court's decision if the decision rests on unsupported facts, if the court adopted a view that no reasonable person would take, or arrived at a decision that is outside the range of acceptable choices. Mitchell, 153 Wn. App. at 822.

The mother takes the position that her right to relief under CR 60(b) should be determined under the relatively liberal standard for relief from a default judgment. See Lane, 81 Wn. App. at 105-06 (the law favors resolution of cases on their merits and appellate courts review vacation of default judgments more leniently than vacation of judgments on the merits). But the final orders entered in this case were not default orders in substance. Under CR 55, a judgment of default may not be obtained against any party who initially appears and defends. In re Marriage of Daley, 77 Wn. App. 29, 31, 888 P.2d 1194 (1994) (where husband failed to appear for dissolution trial, wife was not entitled to default, but was entitled to proceed to trial in his absence); see also Stanley v. Cole, 157 Wn. App. 873, 880, 239 P.3d 611 (2010) ("When a tribunal considers evidence, the resulting judgment is not a default judgment even if one party is absent."). The authority the mother relies on involving the vacation of default judgments is, therefore, inapplicable.

The mother contends that her lack of notice of the trial date was an irregularity in the proceedings. At the hearing on the motion to vacate, she acknowledged that her attorney's notice of intent to withdraw included notice of the trial date and that the document was sent to the correct physical address. Nonetheless, she maintained that "[t]here was never a notice sent to me personally." CP at 11

The trial court rejected the claim of irregularity in the proceedings. We cannot conclude that finding was an abuse of discretion. The asserted irregularity does not

implicate any court process. Nor was the court required to credit the mother's testimony that she did not receive the notice sent to her address by her attorney. There were reasons to question the mother's credibility, as she claimed to be unaware that the trial was underway until 1:30 p.m. but sent text messages to the father hours earlier that were clearly responsive to the father's 9:30 a.m. voicemail message. And to the extent the mother alleged that her attorney failed to apprise her of future court dates before she withdrew, neglect or even incompetence of a party's attorney is generally not sufficient grounds for relief from judgment. Lane, 81 Wn. App. at 107.

We affirm the parenting plan and the denial of the mother's motion to vacate.

Spearman, J.

WE CONCUR:

Trickey, J

Dwyer, J.