IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| SAWYER LAKE VETERINARY HOSPITAL, INC., P.S., a Washington corporation, and DR. JAN WHITE, | ) ) ) ) | No. 76809-3-I |
| Appellants, | ) ) ) | DIVISION ONE |
| v. | ) ) | |
| PINE TREE VETERINARY HOSPITAL, a Washington limited liability company, and BRIDGET FERGUSON, | ) ) ) ) ) | UNPUBLISHED OPINION |
| Respondents. | ) | FILED: May 20, 2019 |

SCHINDLER, J. — Dr. Jan White and Sawyer Lake Veterinary Hospital Inc. PS (collectively, Dr. White) filed a lawsuit against Dr. Bridget Ferguson and Pine Tree Veterinary Hospital. Dr. White appeals denial of her motion to vacate the summary judgment order dismissing the lawsuit under CR 60(b)(9) and CR 60(b)(11). Because the court did not abuse its discretion in denying the motion to vacate, we affirm.

FACTS

Dr. Jan White owns Sawyer Lake Veterinary Hospital Inc. PS in Kent. Dr. Bridget Ferguson specializes in the care of exotic animals and birds. Dr. Ferguson has "an established client base, composed mostly of bird and other exotic pet clients," and is "one of the few avian-certified veterinarians in Washington."

In 2013, Dr. Ferguson was interested in purchasing an existing practice. Dr. Ferguson and Dr. White "engaged in some preliminary negotiations . . . regarding the sale of [Dr. White's] practice." "[I]n exchange for the promise of future ownership," Ferguson agreed to work at Sawyer Lake. On April 16, 2013, Dr. Ferguson signed an "Employment Agreement." Neither the Employment Agreement nor the Sawyer Lake policies and procedures contain any restrictions on competition or opening up her "own clinic." But the Employment Agreement states patients and records are the property of Sawyer Lake and the Sawyer Lake policies and procedures contain a client confidentiality and nondisclosure provision.

By January 2015, "it became apparent" to Dr. Ferguson that Dr. White was no longer interested in selling her veterinary practice. On January 7, Dr. Ferguson told Dr. White she planned to resign and "open my own clinic" but offered to stay through February. At the request of Dr. White, Dr. Ferguson signed the following agreement:

> I, Bridget Ferguson, plan to open Pine Tree Veterinary Hospital in the late spring of 2015. I hereby agree to not accept direct transfers of veterinary clients from Sawyer Lake Veterinary Hospital for 24 months following the opening of said hospital. After that, this agreement is ended. This agreement does not extend to my friends, family, and clients that I brought to Sawyer Lake Veterinary Hospital. A partial list will be sent forward.

Less than two weeks later, Dr. White terminated Dr. Ferguson.

In May 2015, Dr. Ferguson opened Pine Tree Veterinary Hospital in Maple Valley.

On October 2, 2015, Advocates Law Group PLLC and Douglas Davies filed a complaint for damages and injunctive relief on behalf of Dr. White and Sawyer Lake Veterinary Hospital (collectively, Dr. White) against Dr. Ferguson and Pine Tree Veterinary Hospital (collectively, Dr. Ferguson). Dr. White alleged Dr. Ferguson

improperly obtained and used confidential and proprietary client information to solicit Sawyer Lake clients. The lawsuit alleged claims for violation of the Uniform Trade Secrets Act, chapter 19.108 RCW; breach of contract; misappropriation of confidential and proprietary information; and tortious interference with business expectancy.

On October 10, plaintiffs' counsel served Dr. Ferguson with the complaint and "Plaintiffs' First Set of Interrogatories and Requests for Production of Documents." The First Set of Interrogatories and Requests for Production request "a complete list of each and every person who received veterinary goods or services" from Dr. Ferguson.

On October 22, Dr. Ferguson filed an answer. Dr. Ferguson denied the allegations and asserted a number of affirmative defenses. On November 6, defense counsel served Dr. White with "Defendants' First Interrogatories and Requests for Production." The parties agreed to a short extension of the time to file responses to the interrogatories and requests for production.

On November 20, Dr. Ferguson responded to Plaintiffs' First Set of Interrogatories. After the parties and the attorneys entered into a stipulated protective order on January 5, 2016, Dr. Ferguson produced a number of documents.

Following a discovery conference on January 7, Davies agreed to provide preliminary unsigned answers to Defendants' First Interrogatories and Requests for Production by January 12.

On January 22, Dr. Ferguson produced a confidential list that identified 650 Pine Tree clients, the initial date of service, and whether Dr. Ferguson previously provided service for the client at Sawyer Lake.

On February 3, Davies told Dr. Ferguson's attorney that he "was dealing with some health issues" and "would provide discovery responses sometime that day," but did not do so. On February 5, Dr. Ferguson filed a "Motion To Compel Discovery Response" and attorney fees and costs. Davies requested the court schedule a status conference on the defense motion to compel and "a significant and unforeseen matter that has arisen."[1] The court scheduled a status conference for February 26.

On February 19, Davies served responses to Defendants' First Set of Interrogatories and Requests for Production signed and verified by Dr. White. In response to the interrogatory to identify "specific clients Plaintiffs alleged were lost, including the name of the clients" and the "facts regarding" the "specific 'substantial harm, lost profits[,] and continuing loss of profits,' " Dr. White states that absent a "full and complete" response from Dr. Ferguson, she cannot provide an answer to the interrogatory.

> [T]he information sought in this interrogatory is within the possession of defendants in that only defendants know which Sawyer Lake clients they have improperly solicited and serviced. Defendants have produced a partial and incomplete list of Sawyer Lake clients that are now or have been clients of defendants. . . . The loss, damage and harm suffered by Sawyer Lake is on-going and includes, among other things, the loss in business from clients illegally solicited and serviced by defendants, funds and income improperly diverted or converted by defendants, and other harm precipitated by defendants and by others on defendants' behalf. Such loss, damage and harm has not been quantified and cannot be quantified until defendants produce full and complete responses to plaintiffs' discovery requests identifying each and every Sawyer Lake client improperly solicited and serviced by defendants and all services, including lab services which were illegally diverted or converted by defendant Ferguson or others on her behalf. Upon receipt of such information, expert reports will be prepared and produced precisely quantifying the loss, damage, and harm suffered by plaintiffs due to defendants' improper and illegal acts.

---

[1] Emphasis omitted.

On February 23, Davies filed a declaration in support of a 45-day stay and in opposition to the defense request for an award of attorney fees for the motion to compel. Davies states he had recently been diagnosed with "a rare, genetic blood cancer" and "had been undergoing infusion therapy and taking medications that have had significant side effects and are difficult for me to tolerate." Davies states:

> My deteriorating health has made it exceedingly difficult to coordinate with my clients and respond in a timely manner to defendants' discovery requests in this case. The medications and infusions I have been taking have caused me to experience severe side effects, some of which have caused me to miss phone calls and conferences in this case.

Davies said he discussed his condition with Dr. White:

> I have discussed my condition with all of my clients, including the plaintiffs in this action. None have asked me to withdraw, but all have expressed concern over my prognosis and sought assurances that I had coverage for their files.
> . . . The treatment regimen I am on ends March 8, 2016. At that point my physicians are confident they will be able to determine the effectiveness of my treatment and my long term prognosis, including my ability to resume working.

Before the February 26 status conference, Davies filed "Plaintiffs' Opposition" to the motion to compel and award attorney fees. The Opposition asserts the defendants have not been prejudiced because plaintiffs served answers to Defendants' First Set of Interrogatories and Requests for Production on February 19. Dr. White also notes the defendants "have yet to fully provide" complete answers to discovery requests.

> Although plaintiffs served discovery requests on [defendants] on October 2, 2015, defendants have yet to fully provide the single document which is at the center of this litigation; Pine Tree's client list. Despite numerous requests to fully identify their clients, including providing contact information, defendants have failed to do so. Moreover, they have even failed to provide a complete list of clients.

Dr. White argues "circumstances exist" that "make an award of fees here unjust":

Although plaintiffs' counsel admittedly made numerous representations that discovery responses were forthcoming and failed to follow through on those commitments, at the time, he was struggling with symptoms of a significant and life threatening illness, undergoing repeated and intrusive tests and examinations at various hospitals and medical facilities in Puget Sound, while suffering significant and adverse reactions to high doses of potent and debilitating medications and infusions.

At the status conference on February 26, Davies told the court he was diagnosed with a rare blood cancer and "should not be practicing law in any capacity right now."

[T]hat's one reason why I contacted [defense counsel] about — and requested the status conference about staying the case about 45 days to allow someone else to get into this and — because it's very fact-intensive case, it's a very contentious case, as Your Honor probably recognizes. And my biggest concern is that my own personal issues don't impact my client.

Davies said that "more information should be available regarding his health situation and his ability to have ongoing involvement with this case" by the end of March. Davies told the court he "had extensive discussions" with Dr. White about his medical condition and "the kind of errors I was making and the situation that I've, you know, gotten myself into, through no fault of hers whatsoever." Davies told the court Dr. White said she "doesn't want . . . me to withdraw, I've represented her for years."

The court granted a stay and scheduled a status conference for April 1. The court entered an "Order on Motion To Compel, To Stay, and on CR 16 Conference." The court granted the motion to compel plaintiffs to "provide complete responses to the discovery propounded by the defendants." The court found Dr. White had provided inadequate responses and "interposed improper objections" to the defense discovery requests. The order states, "This stay does not, and should not, delay Mr. Davies' efforts to identify co-counsel or substitute counsel or the expectation that, as soon as

such counsel is identified, plaintiffs will work to supplement discovery." The court stayed the case until after the discovery conference scheduled for April 1. However, in the meantime, the court ordered the parties to identify discovery deficiencies.

> In lieu of further [CR] 26(i) conferences, defendants' counsel shall, by no later than March 7, 2016, send a letter to plaintiff's counsel detailing discovery deficiencies and what further supplementation they believe is required. To the extent that plaintiff's counsel or his co-counsel/substitute counsel is able, plaintiffs may also send a discovery deficiency letter and shall make every effort to do so by March 27, 2016 if they wish to address their outstanding discovery at the April 1st conference.

The court reserved ruling on the request for attorney fees.

Defense counsel sent a letter to Dr. White identifying deficiencies in the discovery responses and production of documents. On March 31, Davies sent a discovery "deficiency letter" to defense counsel. Before the status conference on April 1, Dr. White produced additional documents.

At the April 1 status conference, Davies confirmed he "intended to stay on the case" and not either substitute counsel or obtain co-counsel. On May 11, the court entered an "Order on Court-Mandated Discovery Conference and Supplementing Order Granting Defendants' Motion To Compel." The court ordered Dr. White to produce by May 20 tax and additional financial information and the client list Dr. Ferguson previously provided to Dr. White.

> Plaintiffs are ordered to produce a complete copy of any client lists in Plaintiffs' possession provided to Plaintiffs by Defendant Ferguson during the course of Defendant Ferguson's employment at Sawyer Lake, including any list provided at or around the time of hire and prior to commencing work.

The court granted the defense additional time to review the "high volume of additional materials" and to "submit a supplemental deficiency letter."

Dr. White complied with the court's order. On June 9, Davies served "Plaintiffs' Second Interrogatories and Requests for Production of Documents" on Dr. Ferguson. On June 10, defense counsel served Dr. White with "Defendants' Second Interrogatories and Requests for Production."

On June 23, Dr. Ferguson filed a motion for a protective order for the disclosure of client banking account information. Dr. White filed an opposition to the motion for a protective order. The court granted in part and denied in part the request for a protective order. The court ordered, "Plaintiffs' counsel (not plaintiffs) shall pay $500 to [defense counsel] for attorneys' fees/sanctions related to the late response submission."

On July 19, Davies served Dr. Ferguson with responses to Defendants' Second Interrogatories and Requests for Production signed and verified by Dr. White. On August 17, defense counsel served "Defendants' Third Interrogatories and Requests for Production to Plaintiffs."

On October 6, Dr. Ferguson filed a motion for summary judgment dismissal of the lawsuit. Dr. Ferguson argued there was no consideration to support the Employment Agreement she signed. Dr. Ferguson argued Dr. White could not establish damages because no evidence supported finding she solicited Sawyer Lake clients. Dr. Ferguson submitted a declaration and declarations from a number of her clients. Dr. Ferguson noted the hearing for November 4. The response was due October 24.

The court held a pretrial conference on October 14. The court confirmed the November 28 trial date. Davies estimated the bench trial would last five days and approximately 350 exhibits. Davies stated Dr. White planned to file a motion to compel.

The court entered a pretrial order. The court ordered the parties to engage in mediation by November 2.

On October 19, Dr. White filed a 15-page motion to compel discovery and noted the hearing on October 28. The motion to compel asserts Dr. Ferguson "failed to fully identify their clients and have deprived Plaintiffs of an opportunity to identify, contact, interview or depose crucial fact witnesses."[2] Davies filed a lengthy declaration in support of the motion to compel. That same day, Dr. Ferguson filed a motion to compel answers to Defendants' Third Interrogatories and Requests for Production and an award of attorney fees.

Dr. White did not file a response to the summary judgment motion on October 24. Dr. Ferguson filed a motion to shorten time to hear the summary judgment motion before the November 4 hearing date. On October 27, Davies filed a declaration in opposition to the motion to shorten time. Davies states, "Plaintiffs are filing a CR 56(f) Motion for Continuance of Defendants' Motion for Summary Judgment which motion will be timely filed today pursuant to" King County Local Civil Rule 7. Davies asserts the CR 56(f) motion to continue "will be based, in part, on Plaintiffs' Motion to Compel which motion is currently pending before the Court."

On October 27, Davies also filed a declaration in opposition to the motion to compel. Davies asserts he sent the responses to Dr. White on October 25 and served Dr. Ferguson's attorneys with the responses on October 27.

On October 31, the court entered an "Order on Plaintiffs' Motion To Compel," an "Order Granting Defendants' Second Motion To Compel," and an "Order on Defendants' Motion To Shorten Time."

---

[2] Emphasis in original.

The Order on Plaintiffs' Motion To Compel states, in pertinent part:

[D]efendants failed to supply clients' contact information as required by the definition of "identify"; however, they have provided information that allowed plaintiffs to determine overlaps in the client lists and to verify whether the address in Sawyer Lake's records is the same as the address in Pine Tree's records.

The court ordered Dr. Ferguson to supplement responses:

- Defendants shall provide updated versions of the client lists they have previously filed to include any new clients from the date of last production to the discovery cut-off, i.e., October 10, 2016.
- For any clients who have been identified as overlap clients, for whom plaintiffs do not have current contact information, defendants shall provide the missing contact information within two business days of receiving a request.

. . . .

. . . Ferguson shall provide a complete list of any credit applications she made for purposes of financing Pine Tree Veterinary Hospital and shall provide the name and contact information for the institution.

The Order Granting Defendants' Second Motion To Compel states, "Plaintiffs shall respond to Defendants' Third Interrogatories and Requests for Production and produce responsive documents by November 8, 2016." The court denied the defense motion to shorten time to hear summary judgment.

On November 2, 2016, the parties and their attorneys participated in a mediation. During the mediation, Dr. White and Davies discussed filing the CR 56(f) motion to continue the summary judgment hearing. Davies told Dr. White and Sawyer Lake office manager Sheri Shores he would file the CR 56(f) motion before the summary judgment hearing. The parties did not reach an agreement at mediation.

At 7:00 a.m. on November 4, Davies sent an e-mail to the court stating he was unable to attend the summary judgment hearing at 10:00 a.m. because "an onset of severe symptoms" limited his "ability to drive." The court responded to the e-mail at

9:00 a.m., stating, "[A]ppearance by telephone is required" at 10:00 a.m. Davies did not respond or attend the summary judgment hearing. The court entered an order granting the motion for summary judgment dismissal of the lawsuit against Dr. Ferguson.

The order states the court did not receive "a response from plaintiff or a CR 56(f) motion as was previously represented would be filed." The order states, "Summary judgment as to liability is granted for the reasons set out in defendants' brief in support of motion" and "[n]o genuine issue of material fact exists as to damages for any claim. No damages have been shown."

The court awarded sanctions "in the form of two hours of attorney time plus Dr. Ferguson's missed work cost[s]." The court notes that the "[p]reviously reserved motion for fees/sanctions related to the February 2016 motion to compel that was decided 3/4/16 will be addressed by separate order."

Davies contacted Dr. White the afternoon of November 4 to tell her the court dismissed the lawsuit on summary judgment. Davies said he missed the hearing and according to Dr. White, Davies "for the first time" disclosed the full extent of the debilitating issues he was dealing with.

On November 7, the court entered an order awarding attorney fees for the February 2016 motion to compel. The order states that "plaintiffs had failed to respond to discovery and that the limited responses they had supplied were inadequate." The court awarded $7,094.50 in attorney fees.

On November 10, 2016, Patterson, Buchannan, Fobes, and Leitch Inc. PS and Sarah Schulte filed a notice of appearance in the case on behalf of Dr. White.

More than three months later on February 14, 2017, Patterson, Buchannan, Fobes, and Leitch filed a motion to vacate the summary judgment and sanctions orders under CR 60(b)(9) and CR 60(b)(11). Dr. White argued Davies' "failure to respond to motions, prosecute this action, and appear at the summary judgment hearing (1) were the result of unavoidable casualty and misfortune under CR 60(b)(9); and (2) would lead to an unjust result warranting vacation under CR 60(b)(11)."

Dr. White submitted a declaration in support of the motion to vacate and the declaration of the managing partner of Advocates Law Group. Dr. White also filed the sealed declarations of Davies and board-certified psychiatric nurse practitioner Theresse Douglass PhD.

The declaration of the Advocates Law Group managing partner states Davies is a member of the firm. After entry of the summary judgment order, the judge contacted the managing partner to inform him that the judge "concluded that Mr. Davies is either truly unhealthy, or possibly suffering from substance abuse" and that the judge "has filed a bar complaint" against Davies.

The declaration of Dr. White in support of the motion to vacate states the Sawyer Lake client list is "confidential and proprietary information." Dr. White asserts that after she learned Dr. Ferguson planned "to leave to open her own practice," as "specific" and agreed upon consideration for signing the "non-compete agreement," she agreed not to contest unemployment benefits. Dr. White notes the October 2015 interrogatories and requests for production sought critical information.

> [T]he interrogatories asked for a complete list of each and every person who received veterinary goods or services from Defendants, together with complete contact information. It is only with this essential and highly relevant information that Plaintiffs could determine which of its clients had

received goods and services from Defendants and thereby quantify its damages. Notwithstanding that this request was made the day this case was filed, through the production of four iterations of purported "client lists" and two motions to compel, more than one year later, in October 2016, Defendants had still not produced a complete list of its clients with complete contact information. As of October 2016, Defendants had produced only a partial list of [sic] consisting of 646 clients. And as stated multiple times to the Court, Plaintiffs were able to determine that approximately 177 of those clients were former Sawyer Lake clients in violation of the employment agreement, handbook, and non-compete agreement. Most egregiously, it was only AFTER THE DISCOVERY CUT-OFF DATE that Defendants produced an updated client list that consisted of 1,177 clients but without complete contact information. Based on this limited information, Plaintiffs were able to identify approximately 590 former Sawyer Lake clients on this list.

Dr. White admits that "[a]t times I have been concerned about [Davies'] filing of responses or briefs late" and that she knew Davies did not file an opposition to summary judgment. Dr. White asserts Davies planned to file a CR 56(f) motion to continue.

I was exceedingly concerned he failed to file an opposition to the motion for summary judgment filed by the Defendants. He explained though that he was unable to meaningfully respond because of Defendants' stonewalling failure to provide us with a complete client list and financial documents. He explained he was going to file a motion for a continuance under CR 56(f).

However, Dr. White states Davies "was not wholly forthcoming with me and I never fully understood the number of times he was late, the extent of sanctions levied by the Court, or other information indicating that I needed to aggressively intervene." Dr. White states that the afternoon of November 4, after the case had been dismissed, Davies "for the first time, fully informed me of the issues described in his declaration and the declaration of Dr. Douglass."

Dr. White attached a number of exhibits to her declaration, including the Employment Agreement and Sawyer Lake policies and procedures, a declaration of

13

Sawyer Lake office manager Sheri Shores dated November 3, 2016, and a declaration of Dr. White dated November 3, 2016. These declarations state that Dr. Ferguson agreed to sign the noncompete agreement if Dr. White would not contest a claim for unemployment benefits and that Dr. White did not contest the unemployment benefits, resulting in an increase in the unemployment tax rate.

The lengthy sealed declaration of Davies describes serious legal, physical, and mental circumstances. The December 12, 2016 declaration of Dr. Douglass states she began treating Davies in August 2016 and recent events worsened a psychiatric condition.

In opposition, Dr. Ferguson argued the motion to vacate was untimely and Dr. White could not show either casualty or misfortune prevented her from prosecuting her case under CR 60(b)(9) or extraordinary circumstances under CR 60(b)(11).

In reply, Dr. White argued she could not have brought the motion earlier because:

> 1) Mr. Davies needed to obtain approval from law enforcement personnel to disclose, even in a sealed declaration, the ongoing criminal matters; and 2) Dr. Douglass required testing to rule out issues that had been raised regarding Mr. Davies' behavior and conditions. . . . These steps took time, and once complete, there was a sufficient basis to bring the motion to vacate.

The trial court recused and the motion to vacate was assigned to a different judge. The court made findings under Seattle Times Co. v. Ishikawa, 97 Wn.2d 30, 37-39, 640 P.2d 716 (1982), and ordered the declaration of Davies and Dr. Douglass sealed.[3]

---

[3] Because the declarations contain highly private and sensitive matters, we do not cite the information contained in the sealed declarations.

At the March 3, 2017 hearing on the motion to vacate, Dr. White's attorney argued, "[O]ne of the key issues in the case" is whether there was "an unavoidable casualty or misfortune." The court found Davies faced "very, very significant hardship and challenges." But "while profound and profoundly moving in the context of what Mr. Davies has experienced," the court ruled the inquiry before the court is whether the "unavoidable casualty or misfortune" prevented Dr. White from prosecuting or defending the case.

> [O]ne of the key facts in this case is not what happened up to the point of summary judgment. Those are key facts, those are important facts, but I got to be very blunt with you. One of the core facts that we have in this case is that counsel, new counsel, entered this case within the time frame in which a motion to reconsider could have been brought and such a motion was not brought.

Dr. White's counsel asserted, "The reason for the delay is so that Mr. Davies could interact with agents of the federal government, to work through drafts . . . to avoid violating some nondisclosure things that he had with the Feds," and to avoid potential harm "to him and/or his family." The attorney also noted Davies "had been accused of perhaps maybe some substance abuse by the prior judge that was assigned to this case." The attorney said Dr. Douglas also "had her own concerns about how she was going to testify, if at all," and wanted Davies to engage in "drug testing procedures that took some time to complete." However, the attorney agreed that "ideally, a motion for reconsideration would have been filed almost immediately, it simply was not an option."

The trial court disagreed and denied the motion to vacate. The court ruled Davies' casualty or misfortune did not prevent Dr. White from prosecuting her case under CR 60(b)(9). "[T]here was nothing that prevented" Dr. White from prosecuting her case and filing a timely motion for reconsideration "in that time frame."

The court found the record did not support "a significant breakdown" in the attorney-client relationship or abandonment under CR 60(b)(11).

> [T]he fact that Mr. Davies did not communicate to that client the specifics of what was happening, the specifics of the disability under which he was suffering.
>
> That is, again, completely understandable why he didn't communicate that, but, again, that does not fall into the — his failure to communicate to his client that he could no longer effectively represent her, that may in fact fall under the — under the — under the label of negligence as it is — as is discussed in Barr,[4] Stanley,[5] and Olsen.[6] It may. It may not.
>
> But the reality is, that relationship, based upon what I've reviewed, I cannot find that there was such a sufficient — a significant breakdown in the relationship in the context of not communicating the specifics, but in communicating performance, as was attributed in Barr. I cannot make that factual determination based on this record, and I decline to do that.

Dr. White filed a motion for reconsideration, arguing the court abused its discretion in denying the motion to vacate. Dr. White argued the record established under CR 60(b)(9) "an unavoidable casualty and misfortune that directly resulted in the adverse summary judgment ruling" and filing a motion to reconsider that decision would have been "meaningless." Dr. White argued the record established extraordinary circumstances under CR 60(b)(11). Dr. White asserted Barr v. MacGugan, 119 Wn. App. 43, 78 P.3d 660 (2003), was "directly on point" and dispositive.

Dr. White filed a declaration in support of the motion to reconsider. Dr. White states:

> I was wholly unaware of any late filings or submissions by Mr. Davies until I was served personally with Defendants' Order to Show Cause dated June 20, 2016. In reading the Order it appeared that Mr. Davies responded to discovery requests on May 30 rather than when they were due on May 11. And some documents still needed to be produced. I immediately discussed the matter with Ms. Shores and Mr. Davies, Mr.

---

[4] Barr v. MacGugan, 119 Wn. App. 43, 78 P.3d 660 (2003).

[5] Stanley v. Cole, 157 Wn. App. 873, 239 P.3d 611 (2010).

[6] In re Marriage of Olsen, 183 Wn. App. 546, 333 P.3d 561 (2014).

16

Davies explained that the delay in production was due to a confusion in calendaring when his assistant went on vacation. As to the financial and tax records that had not been produced, Mr. Davies explained that it was his understanding the records had been delivered. . . .

. . . From the date we filed the lawsuit in October 2015 until November 1, 2016, I was never advised nor did I have any reason whatsoever to believe that any deadlines were being missed or that Mr. Davies or I were being sanctioned. Insofar as I knew, our lawsuit was proceeding regularly according to the Court schedule and, although we were being stonewalled by the Defendants as far as getting a complete copy of their client list which was essential to support our claims and determine our damages, I understood and believed that Mr. Davies was handling my lawsuit competently.

Dr. White states that during the mediation on November 2, Davies said he would file a CR 56(f) motion for a continuance of the summary judgment. "He further stated that since the court would likely continue the hearing based on the motion, it would be a waste of time for us to attend." Dr. White reiterates she only learned about the "severity of the issues Mr. Davies was dealing with" on November 4.

In opposition, Dr. Ferguson argued the court properly relied on and applied CR 60(b)(9) and CR 60(b)(11). Dr. Ferguson argued Barr was not dispositive and described the significant factual differences.

The trial court denied the motion for reconsideration. The court concluded the motion for reconsideration does not "accurately" reflect the "legal analysis" of the court in denying the motion to vacate:

[I]n their MOTION FOR RECONSIDERATION, the plaintiffs have not accurately reflected the factual and legal analysis of the Court in denying their motion.
The controlling authority in this matter is Stanley v. Cole, 157 Wash.[ ]App. 873, 239 P.3d 611 (Div[.] 1, 2010). Additionally, the Court relied on the persuasive analysis in In Re Marriage of Olsen, 183 Wash.[ ] App.[ ]546, 333[ ]P.3d 561 (2014).
Barr v. MacGugan . . . can be distinguished from the facts of the present case for the reasons set forth on Pages 6-7 of Defendant's OPPOSITION to Plaintiff's MOTION FOR RECONSIDERATION.

17

The Court incorporates by reference the rationale stated in the Court's Oral ruling on March 3, 2017.[7]

Dr. White appeals the order denying the motion to vacate and the motion to reconsider.

---

[7] Pages six through seven of Defendant's Opposition to Plaintiff's Motion for Reconsideration contain the following chart of "Barr vs. our case":

| | |
|---|---|
| Upon learning of the dismissal, Barr promptly hired new counsel to represent her in connection with her motion to vacate. Barr v. MacGugan, 119 Wn.[ ]App. [at] 43. | Mr. Davies is still representing Plaintiffs, is drafting detailed briefing and declarations in this case, and is representing another entity owned by Jan White in an unrelated case. |
| Neither the court nor Barr had any details about the attorney's health condition. Id. | Mr. Davies filed a detailed declaration in February 2016 indicating that he was diagnosed with a "rare, genetic blood cancer". Mr. Davies stated that he discussed his condition with the plaintiffs in this case and that plaintiffs did not ask him to withdraw. Docket No. 15. [Even if he did not discuss specific details, Plaintiff was on notice approximately a year prior to the SJ [(summary judgment)] hearing]. |
| Barr did not know that her attorney missed any deadlines. Id. | Jan White knew: (a) that her attorney was filing responses and briefs late; (b) did not file a response to the SJ; (c) did not file the CR 56(f) motion. She "expressed significant concern" as a result. See White Decl. [(Declaration)] in Support of Motion to Vacate, pg. [(page)] 4, ln. [(lines)] 7-8. |
| Barr did not even know that a motion to compel or dismissed [sic] had been filed. Id. | Jan White knew about the summary judgment motion, having reviewed it with her attorney, expressing "a significant desire to know what the filing meant". She and her attorney "discussed the merit, process of opposing, and the meaning of the motion." Jan White was informed about how and when to respond to the motion. Davies Decl. in Support of Motion to Vacate, pg. 14, para. [(paragraph)] 36. |
| Barr had not communicated with her attorney for 1.5 years by the time her case was dismissed. Id. | Two days before the SJ hearing, Jan White attended mediation with her attorney and "reminded [him] multiple times" to file a CR 56(f) motion. Davies Decl. in Support of Motion to Vacate, pg. 14, para. 36. |

| Barr did not know the location, date or time of the hearings in her case. Barr, 119 Wn.[ ]App. [at] 43. | Jan White knew the date, time and location of the SJ hearing and after asking Davies if she should attend, was told that "there was no requirement for a client to attend oral argument." Davies Decl. in Support of Motion to Vacate, pg. 14-15. [Note: She was not expressly told that she should not attend.] |
|---|---|
| Barr learned almost 1.5 years later that her case was dismissed after hearing about the dismissal from her landlord (who also happened to be an attorney). Barr, 119 Wn.[ ]App. [at] 43. | Jan White knew on the day of dismissal—November 4, 2016—that her case was dismissed. White Decl. in support of Motion to Vacate, pg. 4, ln. 21-22. |
| Barr's new counsel filed a Motion to Vacate two months after learning about the dismissal [the record in Barr is unclear as to when Barr hired new counsel]. Barr, 119 Wn.[ ]App. [at] 43. | Jan White—via new counsel, but while simultaneously being represented by Mr. Davies—filed a Motion to Vacate more than 3 months after learning of the dismissal and despite her new counsel filing a [notice of appearance] only 6 days after the dismissal. |
| "The irregularities that affected the proceedings . . . were entirely outside the control of the plaintiff, the defendant, and the court." Barr, 119 Wn.[ ]App. at 48. | The irregularities in this case were within the control of Jan White. She had multiple and ongoing indicators of Mr. Davies' conduct and chose to proceed knowing the risk involved, and has apparently chosen to continue bearing the risk in a new case. |
| "The agency relationship [had] disintegrated to the point where as a practical matter there [was] no representation." Barr, 119 Wn.[ ]App. at 48. | The agency relationship here had not come close to disintegrating given that counsel and Jan White had been actively communicating with one another, a mediator, the court and opposing counsel just days prior to the hearing and on the day of the hearing (before and after the fact) and that Mr. Davies is still White's attorney in this case and another unrelated case. |
| Barr was a "diligent but unknowing client". Barr, 119 Wn.[ ]App. at 48. | After review of the evidence presented, this court found that "the affidavits that were filed by the plaintiff in this case suggest that there was communication and an awareness of issues" and that "there was not . . . such a sufficient, significant breakdown in the relationship in the context of not communicating the specifics." Maze Decl., Ex[hibit] C. |

(Emphasis in original) (some alterations in original).

19

ANALYSIS

Dr. White contends the trial court abused its discretion in denying her motion to vacate the summary judgment order of dismissal under CR 60(b)(9) and CR 60(b)(11).

CR 60(b) "does not authorize vacation of judgments except for reasons extraneous to the action of the court or for matters affecting the regularity of the proceedings." Burlingame v. Consol. Mines & Smelting Co., 106 Wn.2d 328, 336, 722 P.2d 67 (1986). CR 60(b) provides, in pertinent part:

> Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud; etc. On motion and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment, order, or proceeding for the following reasons:
>
> . . . .
> (9) Unavoidable casualty or misfortune preventing the party from prosecuting or defending;
>
> . . . .
> (11) Any other reason justifying relief from the operation of the judgment.
> The motion shall be made within a reasonable time . . . . A motion under this section (b) does not affect the finality of the judgment or suspend its operation.

We review the trial court's denial of a CR 60(b) motion to vacate for manifest abuse of discretion. Haley v. Highland, 142 Wn.2d 135, 156, 12 P.3d 119 (2000). A trial court abuses its discretion if the decision is manifestly unreasonable or based on untenable grounds. Mayer v. Sto Indus., Inc., 156 Wn.2d 677, 684, 132 P.3d 115 (2006). "An abuse of discretion exists only when no reasonable person would take the position adopted by the trial court." Little v. King, 160 Wn.2d 696, 710, 161 P.3d 345 (2007) (citing Cox v. Spangler, 141 Wn.2d 431, 439, 5 P.3d 1265 (2000)). We review a trial court's factual findings for substantial evidence. Sunnyside Valley Irrig. Dist. v. Dickie, 149 Wn.2d 873, 879, 73 P.3d 369 (2003). Substantial evidence is the quantum

of evidence sufficient to persuade a rational fair-minded person the premise is true. Sunnyside, 149 Wn.2d at 879. Unchallenged findings are verities on appeal. Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 808, 828 P.2d 549 (1992).

CR 60(b)(9)

Dr. White contends the court abused its discretion by finding the "[u]navoidable casualty or misfortune" did not prevent her from prosecuting the case by timely filing a motion for reconsideration under CR 59.

CR 60(b)(9) requires the moving party to establish casualty or misfortune prevented the party from pursuing the case. In Stanley, we concluded CR 60(b)(9) requires "events beyond a party's control—such as a serious illness, accident, natural disaster, or similar event" prevent the party "from taking actions to pursue or defend the case." Stanley, 157 Wn. App. at 882. However, "an unavoidable casualty or misfortune alone is insufficient to allow relief under the rule." Stanley, 157 Wn. App. at 882. The moving party must show casualty or misfortune "actually prevented" the party from pursuing the case. Stanley, 157 Wn. App. at 883.

The trial court's finding that casualty or misfortune did not actually prevent Dr. White from pursuing her case by timely filing a motion to reconsider under CR 59 is not manifestly unreasonable.

Under CR 59(a), the court may vacate a summary judgment order and grant reconsideration for any one of the following pertinent reasons "materially affecting the substantial rights of such parties":

> (1)     Irregularity in the proceedings of the court, jury or adverse
> party, or any order of the court, or abuse of discretion, by which such party
> was prevented from having a fair trial;
>      . . . .

(3)     Accident or surprise which ordinary prudence could not have guarded against;

(4)     Newly discovered evidence, material for the party making the application, which the party could not with reasonable diligence have discovered and produced at the trial;

. . . .

(9)     That substantial justice has not been done.

CR 59(b) states a motion for reconsideration "shall be filed not later than 10 days after the entry of" the summary judgment order of dismissal. CR 59(b) states:

Time for Motion; Contents of Motion. A motion for a new trial or for reconsideration shall be filed not later than 10 days after the entry of the judgment, order, or other decision. The motion shall be noted at the time it is filed, to be heard or otherwise considered within 30 days after the entry of the judgment, order, or other decision, unless the court directs otherwise.
A motion for a new trial or for reconsideration shall identify the specific reasons in fact and law as to each ground on which the motion is based.

The CR 59(b) requirement to file a motion for reconsideration "not later than 10 days after the entry of the judgment, order, or other decision" is mandatory. Metz v. Sarandos, 91 Wn. App. 357, 360, 957 P.2d 795 (1998). The trial court " 'may not extend the time for taking any action under . . . [CR] 59(b).' " Metz, 91 Wn. App. at 360 n.1[8] (quoting CR 6(b)(2)); see also Schaefco v. Columbia River Gorge Comm'n, 121 Wn.2d 366, 367-68, 849 P.2d 1225 (1993).

If the motion for reconsideration is based on facts outside the record, affidavits or declarations identifying specific facts shall be filed in support of the motion for reconsideration. CR 59(c). CR 59(c) states the affidavits or declarations "shall be filed with the motion" and "[t]he opposing party has 10 days after service to file opposing affidavits, but that period may be extended for up to 20 days, either by the court for

---

[8] Emphasis omitted.

good cause or by the parties' written stipulation." The court may also permit reply affidavits. CR 59(c).

Under CR 59(e)(3), the court has the discretion to determine whether the motion "shall be heard on oral argument or submitted on briefs, and if on briefs, shall fix the time within which the briefs shall be served and filed."

CR 6(b) allows the court to enlarge the time to comply with a time limit under the court rules except for "taking any action" under CR 59(b). CR 6(b) states:

> Enlargement. When by these rules or by a notice given thereunder or by order of court an act is required or allowed to be done at or within a specified time, the court for cause shown may at any time in its discretion, (1) with or without motion or notice, order the period enlarged if request therefor is made before the expiration of the period originally prescribed or as extended by a previous order, or (2) upon motion made after the expiration of the specified period, permit the act to be done where the failure to act was the result of excusable neglect; but it may not extend the time for taking any action under rules 50(b), 52(b), 59(b), 59(d), and 60(b).

The record supports the court finding the casualty or misfortune of Davies did not prevent Dr. White from filing a timely CR 59 motion for reconsideration. Unlike in Olsen, filing a motion for reconsideration was not "meaningless." In Olsen, the moving party conceded the evidence presented "was sufficient to uphold the trial court's findings and that the court's findings supported its conclusions." Olsen, 183 Wn. App. at 553.

Here, Dr. White knew Dr. Ferguson had filed a motion for summary judgment and the motion was scheduled to be heard on November 4. Dr. White reviewed the motion with Davies and discussed the merits and opposing the motion. Dr. White knew Davies planned to file a CR 56(f) motion to continue the summary judgment hearing. The record shows that after the defense filed the motion for summary judgment, Davies engaged in efforts to obtain additional information from Dr. Ferguson. The parties

23

attended a mediation on November 2. During the mediation, Davies assured Dr. White and Shores that he planned to file the motion to continue before the November 4 hearing. The record shows Dr. White and Shores signed affidavits on November 3 contesting the assertion of Dr. Ferguson that she signed the agreement not to compete without consideration.

Davies did not attend the summary judgment hearing on November 4, 2016 and the court entered the order dismissing the lawsuit on summary judgment. Davies contacted Dr. White the afternoon of November 4. The record establishes that on November 4, Dr. White knew Davies did not file a CR 56(f) motion to continue the summary judgment hearing, "he had missed the hearing," and the court dismissed her lawsuit. Dr. White states that for "the first time" on November 4, 2016, Davies "fully informed me" of the "full extent of the issues":

> It was not until our phone call on the afternoon of November 4, 2016, when he advised me that he had failed to appear at the hearing and the Defendants' summary judgment was granted that I had any idea whatsoever of the extent and severity of the issues Mr. Davies was dealing with.

On November 10, 2016, new counsel filed a notice of appearance on behalf of Dr. White.

The record establishes a number of grounds to file a timely motion for reconsideration, including irregularity in the proceeding, accident or surprise, substantial justice had not been done, and newly discovered evidence. CR 59(a)(1), (3), (9), (4).[9] The affidavits from Dr. White and Shores submitted in support of a motion for

---

[9] CR 59 does not prohibit a party from submitting new or additional evidence on reconsideration. The trial court has the discretion to decide whether to consider the additional evidence. Martini v. Post, 178 Wn. App. 153, 162, 313 P.3d 473 (2013).

24

reconsideration would have presented compelling reasons to consider granting the motion. The affidavit of Dr. White would also establish good cause to grant an extension of time to file the affidavit of Davies and continue the hearing on the motion to reconsider.

We conclude the court did not abuse its discretion in denying the motion to vacate under CR 60(b)(9).

CR 60(b)(11)

In the alternative, Dr. White contends the trial court abused its discretion by denying the motion to vacate the summary judgment and sanctions orders under CR 60(b)(11). CR 60(b)(11) allows the court to vacate an order for "[a]ny other reason justifying relief from the operation of the judgment." CR 60(b)(11) is confined to extraordinary circumstances not covered by any other section of the rule. Barr, 119 Wn. App. at 46.

As a general rule, "an attorney's negligence or neglect does not constitute grounds for vacating a judgment under CR 60(b) because, under the law of agency, if an attorney is authorized to appear on behalf of a client, that attorney's acts are binding on the client." Barr, 119 Wn. App. at 46 (citing Haller v. Wallis, 89 Wn.2d 539, 547, 573 P.2d 1302 (1978)); see also Stanley, 157 Wn. App. at 886. In Barr, we recognized a limited exception to this general rule.

In Barr, the trial court dismissed the case with prejudice after the plaintiff's attorney failed to comply with the court's order compelling responses to discovery requests. Barr, 119 Wn. App. at 45. The plaintiff left several phone messages with her attorney to check on the status of her case, but the attorney never responded. Barr,

25

119 Wn. App. at 45. The plaintiff learned from a third party that her case had been dismissed and also learned that her attorney had been suffering from severe clinical depression. Barr, 119 Wn. App. at 45. The plaintiff hired new counsel and filed a motion to vacate the dismissal order under CR 60(b)(11). Barr, 119 Wn. App. at 45. The trial court granted the plaintiff's motion, and this court affirmed. Barr, 119 Wn. App. at 45, 49.

While acknowledging the general rule that an attorney's negligent conduct is binding on the client, we concluded that this general rule did not necessarily apply where the plaintiff's attorney experienced severe depression and the attorney-client relationship had "disintegrated to the point where as a practical matter there is no representation." Barr, 119 Wn. App. at 48; see also Olsen, 183 Wn. App. at 557 (citing Cmty. Dental Servs. v. Tani, 282 F.3d 1164 (9th Cir. 2002); Maples v. Thomas, 565 U.S. 266, 282, 132 S. Ct. 912, 181 L. Ed. 2d 807 (2012) (abandonment only if there is near-total failure to communicate with client or respond to inquiries)). We specifically limited the exception to the general rule that an attorney's negligent conduct is binding on his client to "situations where an attorney's condition effectively deprives a diligent but unknowing client of representation." Barr, 119 Wn. App. at 48.

> [The plaintiff] diligently provided information to her attorney and made appropriate follow-up inquiries, but through no fault of her own was unaware of her attorney's disability. The irregularities that affected the proceedings below were entirely outside the control of the plaintiff, the defendant, and the court.

Barr, 119 Wn. App. at 48.

Here, unlike in Barr, the court concluded the record does not support finding the attorney-client relationship between Davies and Dr. White had disintegrated to the point

26

where there was no representation. The record supports the trial court's conclusion. The record also supports finding that Dr. White was not an unknowing client. The record shows Davies had represented Dr. White "for years." Dr. White knew by February 2016 that Davies was facing serious health issues and that he had missed deadlines but did not want him to withdraw. Between February 25, 2016 and October 27, 2016, Dr. White reviewed and signed verifications for answers to interrogatories and requests for production. In June 2016, Dr. White knew that Davies was "filing . . . responses or briefs late." Dr. White knew Dr. Ferguson filed a motion for summary judgment in October and the hearing was noted for November 4. Dr. White and Davies discussed filing a CR 56(f) motion to continue the summary judgment hearing and she knew Davies planned to file motions to compel additional discovery on damages. At the mediation on November 2, Davies told Dr. White he had not filed an opposition to the summary judgment motion. But Davies assured Dr. White and Shores during the November 2 mediation that he planned to file the motion before the hearing on November 4. Davies called Dr. White the afternoon of November 4 to tell her the court had dismissed the case and for the first time explain the full extent of his circumstances. Davies arranged to obtain new counsel and new counsel filed a notice of appearance on November 10. The record also shows that on March 23, 2017, Davies represented Dr. White and filed a notice of acceptance of service on her behalf in another case. We conclude the trial court did not abuse its discretion in denying Dr. White's motion to vacate under CR 60(b)(11).

We affirm denial of the motion to vacate the order granting summary judgment dismissal under CR 60(b)(9) and CR 60(b)(11).

Schindler, J.

WE CONCUR:

Chun, J.                    Leach, J.